James H. ADDY, et al., Plaintiffs,

v.

NEWTON COUNTY, MISSISSIPPI et al., Defendants,

and

Billy L. Crowther, Mildred Crowther, Albert McCune, Margie McCune, Arsthalia Bipson, Diann Chapman, and Jimmie H. Evans Defendants–Intervenors.

No. CIV. 4:95CV39LN.

United States District Court, S.D. Mississippi, Eastern Division.

July 18, 1997.

Thomas L. Goldman, Goldman and Associates, Meridian, MS, James A. Williams, Pau-

la N. Stennett–Yancey, Meridian, MS, for Plaintiffs.

Robert M. Logan, Jr., Logan & May, Newton, MS, Robert B. McDuff, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

Plaintiffs, residents of Newton County's Supervisor District One, a majority-minority district that was created for the purpose of remedying a violation of § 2 of the Voting Rights Act, 42 U.S.C. § 1973 *et seq.* in accordance with a 1989 consent decree entered by this court, filed this suit contending that the district was racially gerrymandered in contravention of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs have maintained that the district is unconstitutional according to the principles established by *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (*Shaw I* ), and its progeny. Following the denial of a motion by defendant-intervenors for summary judgment, a trial was held before the court without a jury. Based upon the evidence adduced and for the reasons that follow, the court concludes that plaintiff's complaint should be dismissed.

In *Clark v. Calhoun County,* 88 F.3d 1393, 1407 (5th Cir.1996), the court, drawing primarily from the Supreme Court's opinion in *Bush v. Vera,* 517 U.S. 952, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996), identified a two-part inquiry for use in determining whether a majority-minority district passes constitutional muster: "Such a district is constitutional if the state has a 'strong basis in evidence' for concluding that the three *Gingles* preconditions are present and if the district drawn in order to satisfy § 2 does not 'subordinate traditional districting principles to race substantially more than is "reasonably necessary" to avoid § 2 liability.' " *Clark,* 88 F.3d at 1407 (quoting *Bush,* 116 S.Ct. at 1961.) In the case at bar, the first of these inquiries is not in issue. Plaintiffs acknowledge that there existed a § 2 violation which the County was required to remedy by the creation of a majority-minority district. Indeed, that was the very subject of the *Crowther* litigation in which the court, upon the parties' agreement and in light of the obvious fact that the districts as then drawn violated § 2, ordered that there be created a districting plan which included a majority-minority district. What the plaintiffs contend in this case is that the districts which the County created in order to remedy the § 2 violation violate the Equal Protection Clause by completely subordinating traditional districting criteria to race. Specifically, plaintiffs maintain that in creating District One, the majority-minority district drawn in response to the court's order, the County gave practically no consideration to the traditional districting criteria of (1) compactness, (2) respect for communities of interest, and (3) maintaining equal road mileage among the districts. In other words, it allowed considerations of race to dominate its decisions as to the boundaries of the district, to the exclusion of these usual criteria.

Race undeniably and necessarily played a role in the drawing of the districts since the goal and purpose of the County's redistricting process was, first and foremost, the creation of a district with a substantial minority majority (i.e., 65% or better). However, having considered the evidence adduced by the parties, the court is persuaded that the County did not subordinate the districting principles cited by plaintiffs " 'subtantially more' than was reasonably necessary" in order to achieve compliance with § 2.

With respect to the plaintiffs' contention that the County's 1989 and 1991 plans failed to respect defined communities of interest by dividing each of two of the County's three major towns among two or more districts, the court would observe that the County's prior plan (the 1982 plan) likewise split two of the towns such that portions of the town of Newton were in four supervisor districts and the town of Union was separated into two supervisor districts. In light of this fact, it would be difficult to say that the County has seen these towns as having any "community of interest" relative to County government or that it has traditionally respected the integrity of town boundaries when crafting supervisor districts. Moreover, there was substantial evidence presented that those persons comprising the black populations from each of the towns that were included in the Coun-

ty's 1989 and 1991 plans as District One have a community of shared political interests which warranted their collective inclusion in a single district. Accordingly, the court cannot conclude that the County needlessly split legitimate communities of interest in creating District One.

A second districting criteria which plaintiffs contend was neglected by the County is the maintenance of equal road mileage in each of the County's supervisor districts. It is the court's recollection, though, that unrefuted evidence was presented to the effect that while District One did end up with less road mileage than the other districts, adoption of the plan proposed by plaintiffs would have resulted in a different district's (namely District Four) having lesser road mileage than the remaining districts. Thus, to the extent that equalization of road mileage among the districts might be characterized as a districting goal which was subordinated to racial considerations, it obviously was not subordinated to racial considerations any more than was reasonably necessary. *Cf. Clark,* 88 F.3d at 1401 (while administrative convenience of a system of equalizing road mileage among districts was evident, there was "no suggestion that equal road mileage [was] 'integral' to the office of county supervisor").

That brings the court to the third of the three districting principles which plaintiffs claim was entirely disregarded by the County for the sake of crafting a majority-minority district. As the court interprets their positions, the parties agree that in order to accomplish its purpose of creating a majority-minority district, the County, in view of the geographics and demographics of the county, had two choices: it could create an east-west district in the southern part of the county, or it could do what it did, which was to draw a north-south district which encompassed the black populations in the towns of Newton, Decatur and Union. No one disputes that an east-west district could have been drawn which would have been more compact than the north-south district which the County adopted. But neither is it disputed that a north-south configuration was selected because three members of the Board—a majority—saw that it could be drawn to accomplish something that an east-west district could

not, namely, to protect their own seats and to undermine the chance of James Addy's re-election to the Board by placing him in the majority-minority district. It is easily seen, therefore, that to the extent the County may have sacrificed a degree of compactness by selecting the north-south rather than east-west location for the majority-minority district, it did so exclusively for political, not racial reasons.

In *Clark,* the court explained that "[t]o be narrowly tailored, the remedial district must use race at the expense of traditional political concerns no more than is reasonably necessary to remedy the found wrong. Stated another way, the remedial district must 'substantially address' the violation and 'not deviate subtantially from a hypothetical court-drawn § 2 district for predominantly racial reasons.'" *Clark,* 88 F.3d at 1407–08. It is apparent in the case at bar that any deviation from the district that a court would hypothetically had drawn to remedy the § 2 violation was not "predominately attributable to gerrymandering that was racially motivated and/or achieved by the use of race as a proxy," *Bush,* 116 S.Ct. at 1961, but was instead a "case of predominately nonracial, political manipulations," *id.* at 1962. And since the court views District One, as configured by the County in its 1989 and 1991 plans, as being, though not perfectly so, at least reasonably compact, it is not unconstitutional. *See Bush,* 116 S.Ct. at 1960 ("A § 2 district that is reasonably compact and regular, taking into account traditional districting principles such as maintaining communities of interest and traditional boundaries, may pass strict scrutiny without having to defeat rival compact districts designed by plaintiffs' experts in endless 'beauty contests.' ").

In summary, under the circumstances of this case, the court is persuaded that the districts reflected by the County's 1989 and 1991 plans do not violate plaintiffs' rights under the Equal Protection Clause. *See Theriot v. Parish of Jefferson,* 966 F.Supp. 1435, 1997 WL 204919, at *13–14 (E.D.La. 1997) (where "[a]t least two other plans were considered, both of which may have been more 'compact' or 'prettier[,]' " there was no equal protection violation since the decision

as to where to place the district lines was driven by politics, not race, even though the councilmen "did make partisan political decisions in which race was used as a means to identify constituent support"). Consequently, the court is of the opinion that plaintiffs' complaint lacks merit and should be dismissed.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.